# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | | |
|---|---|---|
| **TRACY A MILLER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **VS.** | : | **NO. 5:23-CV-00478-TES-CHW** |
| | : | |
| **GEORGIA DEPARTMENT OF** | : | |
| **COMMUNITY SUPERVISION,** | : | |
| ***et al.***, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## ORDER AND RECOMMENDATION

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff Tracy A. Miller has filed a Second Recast Complaint (ECF No. 21), which becomes the operative pleading in this action.  *See Schreane v. Middlebrooks¸* 522 F. App'x 845, 847 (11th Cir. 2013) (per curiam) (noting that generally, an amended complaint supersedes the original complaint unless the amended complaint specifically refers to or adopts the original complaint).[1]  Plaintiff also filed a motion for leave to include excess pages in his Recast Complaint (ECF No. 22) and a motion for recusal and to clarify whether the Prison Litigation Reform Act ("PLRA") applies in this case (ECF No. 23).  Plaintiff's Second Recast Complaint is now ripe for review pursuant to 28 U.S.C. § 1915(e).  For the

---

[1] Plaintiff also filed a First Recast Complaint (ECF No. 20), but it appears unlikely that it was drafted in response to the Court's order to recast given that it was dated February 6, 2024, and the Court's order to recast was not mailed until February 2, 2024. At any rate, the Second Recast Complaint would supersede the Recast Complaint and serves as the operative pleading in this action, as noted above.

following reasons, Plaintiff's motion for leave to include excess pages is **GRANTED**, but Plaintiff's motion for recusal is **DENIED.**   In addition, Plaintiff's § 1983 due process and ex post facto claims against the Chairman of the Georgia State Board of Pardons and Paroles shall proceed for further factual development.   It is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice**.

<h2 style="text-align:center">PENDING MOTIONS</h2>

Plaintiff has filed a motion requesting leave to include excess pages in his Second Recast Complaint (ECF No. 22).   This motion is **GRANTED,** and the Court has considered this pleading in its entirety.   In addition, Plaintiff filed a motion seeking recusal of the undersigned, clarification regarding the Court's statement that the three-strikes provision of the PLRA may apply in this action, and authority for the proposition that the Court can raise this issue on its own motion.   Mot. Recusal 1, ECF No. 23.   The statutory basis for Plaintiff's recusal motion is unclear, but the Court presumes Plaintiff intends to seek recusal pursuant to 28 U.S.C. § 455.   This statute generally provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."   28 U.S.C. § 455(a).   The statute also enumerates certain other circumstances requiring a judge to disqualify himself.   *Id.* at § 455(b)(1)-(5).   Plaintiff appears to suggest that the Court is biased against him because it raised the issue of whether the PLRA applies to Plaintiff's Complaint *sua sponte.*   Mot. Recusal 1-2, ECF No. 23. Plaintiff may thus be relying on either subsection (a) or (b)(1).

The standard under subsection (a) is objective and requires the Court to ask "whether an objective, disinterested lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal quotation marks omitted). In the Eleventh Circuit, "it is well settled that the allegation of bias must show that the bias is personal as distinguished from judicial in nature." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (internal quotation marks and citation omitted) (per curiam). As a result, "a judge's rulings in the same or a related case are not a sufficient basis for recusal," except in rare circumstances where the previous proceedings demonstrate pervasive bias and prejudice. *Id.*; *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute [a] valid basis for a bias or partiality recusal motion."); *McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990) ("[The bias] must derive from something other than that which the judge learned by participating in the case.").

In this case, Plaintiff has not pointed to specific facts showing that any sort of extrajudicial bias existed, nor has Plaintiff demonstrated that the Court's ruling in its previous order exhibits "such a high degree of . . . antagonism as to make fair judgment impossible" or a bias toward Plaintiff "so extreme as to display clear inability to render fair judgment." *See Liteky*, 510 U.S. at 551, 555.[2] Indeed, contrary to Plaintiff's belief, the

---

[2] Even "[r]epeated rulings against a litigant, no matter how erroneous and how vigorously and consistently expressed, are not a basis for disqualification of a judge on the grounds of

Court has the obligation to determine on its own motion whether a litigant is subject to § 1915(g). *See Casey v. Scott*, 493 F. App'x 1000, 1001 (11th Cir. 2012) (per curiam) (holding that "[t]he district court <u>must</u> search the record of the plaintiff's federal cases to determine if they were dismissed for the relevant reasons" (emphasis added)).   In its prior order, the Court simply found that it did not have enough information to conclusively determine whether § 1915(g) applied to this case.   The Court therefore permitted this case to proceed but advised Plaintiff that it could revoke leave to proceed *in forma pauperis* if circumstances later warranted.   The Court's efforts to fulfill its obligations under the PLRA cannot show bias.

28 U.S.C. § 455(b)(1) requires disqualification where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]"   "Recusal under this subsection is mandatory, because 'the potential for conflicts of interest are readily apparent.'"   *Patti*, 337 F.3d at 1321 (quoting *Murray v. Scott*, 253 F.3d 1308, 1312 (11th Cir. 2001)).   Again, Plaintiff has failed to establish any personal or pervasive bias on the part of the Court, and Plaintiff also fails to identify any specific "disputed evidentiary facts" of which the Court might have knowledge.   In short, the fact that Plaintiff disagrees with the way the Court ruled in its previous order, standing alone, cannot serve as a basis for recusal pursuant to 28 U.S.C. § 455(a) or (b)(1).   Plaintiff's motion for recusal (ECF No. 23) is therefore **DENIED.**

---

bias and prejudice."   *See Maret v. United States*, 332 F. Supp. 324, 326 (E.D. Mo. 1971).

## PRELIMINARY REVIEW OF PLAINTIFF'S CLAIMS

### I.      Standard of Review

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee.  *See* 28 U.S.C. § 1915A(a).  Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.  Even if the PLRA does not apply in this action, § 1915(e) does apply, and the standard of review under both statutes is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).  *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'"  *Hughes*, 350 F.3d at 1160 (citation omitted).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'"  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted).  The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'"  *Id.* (citation omitted).  A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'"   *Twombly*, 550 U.S. at 555 (citation omitted).   In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.   *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal.   *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.   Factual Allegations

Plaintiff is a parolee who was granted clemency by the Georgia State Board of Pardons and Paroles (the "Board") on January 18, 2023.   2d Recast Compl. 14, ECF No. 21.   Due to Plaintiff's advanced age and health conditions, which include paraplegia, the Board placed him at the Bostick Nursing Center in Milledgeville, Georgia ("Bostick"), a nursing facility that houses "elderly and infirm inmates who otherwise might not have a

place to go when they're paroled." Rhonda Cook, *Nursing home for prison inmates opening in Milledgeville*, Atlanta Journal-Constitution (Dec. 19, 2016), https://www.ajc.com/news/local/nursing-home-for-prison-inmates-opening-milledgeville/bxty42FvMBDkO7T8jla8WP/. Plaintiff's claims center on his placement in Bostick and his treatment there.

In his Second Recast Complaint, Plaintiff names the following individuals as Defendants in this action: (1) Dr. Leo, Bostick's "Medical Director of Mental Health," (2) Collette Lewis Mitchell, who is described as the medical director or administrator at Bostick, (3) Jame Rogan, Bostick's "Medical Director Residents," (4) the Chairman of the Georgia Board of Pardons and Paroles, and (5) Jenna Brantley, Plaintiff's parole officer.[3] 2d Recast Compl. 4, ECF No. 21. Plaintiff alleges the Board imposed a "special condition" on his release that requires him to register as a "domestic offender" even though he has never been convicted of any domestic offense. *Id.* at 12. In addition, Plaintiff states that the Board improperly required him to pay a "domestic violence offenders course

---

[3] As noted above, the Second Recast Complaint is the operative pleading in this case, and Plaintiff was instructed to include all claims and defendants he wished to pursue in his Second Recast Complaint. The Clerk is therefore **DIRECTED** to terminate the following as Defendants in this action because they were not named in the Second Recast Complaint: (1) the Georgia Department of Community Supervision; (2) the Georgia Department of Pardons and Paroles; (3) Aron Minified; (4) Bostic Nursing Center; (5) "Brantley," which the Court assumes is a reference to Defendant Jenna Brantley, who is already named in the Second Recast Complaint; and (6) Doctor Carlos Musso. The Clerk is also **DIRECTED** to change the spelling of "Doctor Lea" to "Doctor Leo" to conform with Plaintiff's Second Recast Complaint.

fee" and a "substance abuse assessment fee" as special conditions of his parole.    *Id.* at 11.
He also appears to suggest that the Board violated federal law by paroling Plaintiff to
Bostick rather than allowing him to reside somewhere else.    *Id.*

Plaintiff also challenges his treatment at the facility itself.    Plaintiff first contends
that Defendants at Bostick improperly modified the conditions of his parole without the
knowledge or consent of the Board.    Specifically, Plaintiff alleges his original conditions
of parole did not require him to remain confined to Bostick, but Defendants at Bostick later
restricted him to that facility for six months.    2d Recast Compl. 13, ECF No. 21; Letter 3,
May 6, 2024, ECF No. 23.    This restriction significantly limited his access to his family
and the community and subjected him to "prison-like" conditions.    2d Recast Compl. 7-8,
ECF No. 21.    Plaintiff contends Defendant Mitchell requires residents to quarantine;
installed locking doors and unopenable windows in the dorms; requires safety officers to
escort residents to and from her office; authorizes searches and seizures of residents'
dorms; denies day passes; and maintains inappropriate control over residents' personal
funds.    *Id.*    Plaintiff further alleges Defendants at Bostick effectively forced him to take
psychotropic medication as a condition of his parole and otherwise failed to provide him
with adequate medical care at the facility.    *Id.* at 6-8, 10.    He also suggests the
psychotropic medication was used as a form of "chemical restraint" against him.    *Id.* at 6.
When Plaintiff complained about these conditions, he contends Defendants at Bostick
retaliated against him and discriminated against him on the basis of his race and disability.
*Id.* at 10, 13-14.

Plaintiff contends Defendants' actions violated his constitutional and statutory rights. As a result of these alleged violations, Plaintiff seeks injunctive relief requiring Bostick to discontinue the use of chemical restraints against its residents as well as other unspecified injunctive relief, declaratory relief, and monetary damages against the various Defendants in this case. 2d Recast Compl. 7, 15, ECF No. 21.

### III. Plaintiff's Claims

#### A. Joinder of Claims

As described above, Plaintiff's claims appear to fall into two general categories: his claims challenging the original conditions the Board placed on his parole, and his claims that the Defendants at Bostick—Brantley, Leo, Rogan, and Mitchell—changed the conditions of his parole and violated his constitutional and statutory rights once he arrived at that facility. When faced with this type of multi-party, multi-claim lawsuit—particularly one filed by an individual deemed to be an abusive filer pursuant to 28 U.S.C. § 1915(g)—the Court must question the propriety of joinder. *See, e.g., George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).[4] A careful review of Plaintiff's Second Recast Complaint demonstrates that Plaintiff's claims against the Board should not be joined with his claims against Defendants Brantley, Leo, Rogan, and Mitchell. *See id.* ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of

---

[4] While it is unclear whether the PLRA applies in this case, it is clear that Plaintiff has previously been determined to be a "three-striker" who has abused the privilege of proceeding *in forma pauperis* in this Court. *See* Order 3, ECF No. 14.

morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoner pay the required filing fees[.]").

### 1.    *Standard for Joinder*

The Federal Rules of Civil Procedure permit a plaintiff to join only related claims and defendants in a single complaint.   In order to properly join defendants under Federal Rule of Civil Procedure 20(a)(2), the plaintiff must establish that he is asserting a right to relief against them "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," <u>and</u> that "any question of law or fact common to all defendants will arise in the action."   Once a plaintiff has established that each defendant is properly joined, only then may he join as many claims as he has against each party per Federal Rule of Civil Procedure 18(a).   *See, e.g.,* 6A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1585 (3d Ed. Apr. 2023) ("Once parties are properly joined under [Rule 20] as to a particular claim, additional claims, whether they are related or unrelated or they are by or against all or less than all of the parties may be joined under Rule 18(a).").

The Eleventh Circuit applies the "logical relationship" test to determine whether claims arise from the same transaction or occurrence for joinder purposes.   *See, e.g., Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic Health Corp. v. Lifemark Hosp. Corp. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)).[5]

---

[5] The standard for Rule 20 purposes is the same as that used for compulsory counterclaims under Federal Rule of Civil Procedure 13.   *See Smith*, 728 F. Supp. 2d at 1319.

"Under this test, there is a logical relationship when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Republic Health Corp.*, 755 F.2d at 1455 (internal quotation marks omitted).  In exercising its discretion regarding joinder, the Court should "provide a reasoned analysis that comports with the requirements of the Rule" and "based on the specific fact pattern presented by the plaintiffs and claims before the court." *Hagan v. Rogers*, 570 F.3d 146, 157 (3d Cir. 2009).  The Court's discretion is also informed by the PLRA and its goals of preventing unwieldy litigation, ensuring the payment of filing fees, and limiting prisoners' ability to bring frivolous cases. *See George*, 507 F.3d at 607.

Plaintiff's two sets of claims in this case do not rest on the same operative facts, primarily because Plaintiff does not need to show that the original conditions of his parole were unconstitutional to prevail on his claims that the Defendants at Bostick mistreated him once he arrived, or vice versa.  *See Republic Health Corp.*, 755 F.2d at 1455.   Indeed, the crux of Plaintiff's claims against the Bostick Defendants is that they improperly modified Plaintiff's original conditions of parole without the involvement of the Board. 2d Recast Compl. 13, ECF No. 21.  When two sets of claims function independently of one another in this manner, joinder is not appropriate.  *See State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416–17 (10th Cir. 1984) (affirming denial of joinder where allegations against proposed defendant were "only tangentially related to the issues and series of transactions" in the pending case because "[d]ifferent elements of proof

are required for the proposed cause of action, involving different questions of fact and law"); *BBK Tobacco & Foods, LLP v. 7th St. Vill. Farm Inc.*, 1:17-CV-4079-GHW, 2017 WL 8723938, at *1 (S.D.N.Y. June 15, 2017) ("A logical relationship does not exist where a plaintiff's claims are 'independent and distinct from the allegations against the [other] Defendants[.]'" (alteration in original) (quoting *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 166, 168 (S.D.N.Y. 2009)).

Joining these two sets of claims will also cause the management of this case to become considerably more difficult and delay the resolution of Plaintiff's claims.   7 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1652 (3d Ed. Apr. 2023) ("[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense or delay.").   Plaintiff's motion for recusal appears to raise additional claims concerning the current conditions at Bostick.   *See, e.g.,* Mot. Recusal 5-6, ECF No. 23 (complaining about continued retaliation, repeated exposure to human excrement, wheelchair accessibility in his room, and flooding in bathrooms, among other things).   If the claims against the Defendants at Bostick are dismissed without prejudice, as recommended, Plaintiff will have the opportunity to include these claims in a separate action if he wishes.

Finally, while it is unclear whether the PLRA applies to this case, there is at least a possibility that allowing the Plaintiff to raise multiple, unrelated claims in a single lawsuit could allow him to circumvent the requirements of the PLRA.   For all these reasons, the Court should exercise its discretion to find that Plaintiff's claims against Defendants

Brantley, Mitchell, Rogan, and Leo concerning the conditions under which he is confined at Bostick are improperly joined to Plaintiff's claims against the Chairman of the Board concerning the original conditions of his parole.   The Court should accordingly dismiss Plaintiff's claims against Defendants Brantley, Mitchell, Rogan, and Leo without prejudice.

> B.   Section 1983 Claims against the Chairman of the Georgia State Board of Pardons and Paroles

Plaintiff contends that the Chairman of the Board violated his constitutional and statutory rights by imposing several special conditions on his parole.   There appears to be a split of authority as to whether a state prisoner may challenge the conditions of his parole in a § 1983 action or whether he must raise such claims in a habeas corpus petition.   As a general rule, "a challenge to the fact or duration of a prisoner's confinement is properly treated as a habeas corpus matter, whereas challenges to conditions of confinement may proceed under [42 U.S.C.] § 1983 . . . ."   *McKinnis v. Mosely*, 693 F.2d 1054, 1057 (11th Cir. 1982) (per curiam) (quoting *Johnson v. Hardy,* 601 F.2d 172, 174 (5th Cir. 1979)). But applying this general rule to parolees can be complicated: "the question is more metaphysical, because the 'conditions' of the parole *are* the confinement."   *Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir. 2003) (emphasis in original).   In other words, the restrictions that are placed on a parolee's actions "are what distinguish parole from freedom."   *Id.*   Some courts have therefore concluded that when a parolee seeks relief from one of the restrictions imposed by his parole, he is seeking to substantively alter his

confinement, and such claims must be brought under habeas corpus. *Id.* Other courts have found that challenges to parole conditions are analogous to challenges to prison conditions and can therefore be brought via § 1983. *See, e.g., Yahweh v. U.S. Parole Comm'n*, 158 F. Supp. 2d 1332, 1339 (S.D. Fla. 2001) (analogizing challenges to parole conditions to challenges to prison conditions and concluding, as a matter of first impression, that "habeas corpus is not an exclusive remedy for parolees challenging their parole conditions"). It will thus be assumed for purposes of preliminary screening that § 1983 is an appropriate vehicle for Plaintiff's claims. It should be noted, however, that "the individual members of the Parole Board are entitled to absolute quasi-judicial immunity from a suit for damages." *Fuller v. Ga. State Bd. of Pardons & Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988). Plaintiff is therefore barred from recovering monetary damages against the Chairman of the Board, although "to the extent that [Plaintiff] is seeking declaratory and injunctive relief, the shield of absolute immunity is inapplicable." *Id.*

### 1.   *Due Process Claims*

Plaintiff's allegations concerning the original conditions of his parole first give rise to due process claims. The Due Process Clause of the Fourteenth Amendment protects against deprivations of "life, liberty, or property without the due process of law." U.S. Const. amend. XIV. In order to establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must generally show that a person acting under color of state law deprived him of a constitutionally protected liberty or property interest without

constitutionally adequate process.   *See, e.g., Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1236 (11th Cir. 2003) (per curiam).

To the extent Plaintiff is contending that the Board violated his due process rights by placing him at Bostick rather than permitting him to be housed somewhere else, he has failed to allege facts sufficient to state an actionable claim.   Parole is not equivalent to freedom: it is simply "an established variation on imprisonment of convicted criminals," the essence of which "is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477 (1980).   In other words, a parolee "does not enjoy 'the absolute liberty to which every citizen is entitled, but only [a] conditional liberty properly dependent on observance of special parole restrictions.'"   *Johnson v. Mondrosch*, 586 F. App'x 871, 874 (3d Cir. 2014) (quoting *Morrissey*, 408 U.S. at 480)).   And "[r]estrictions to a particular community, job, or home, as well as restrictions on travel or movement are standard conditions of parole."   *Id*.   A parolee therefore has no due process right to be paroled to the location of his choosing.   *See, e.g., Bocanegra v. Bell*, 482 F. App'x 907, 908 (5th Cir. 2012) (per curiam) (holding that due process rights of plaintiff who had been paroled to halfway house because he failed to "show that the condition was stigmatizing or invasive" and he did "not have a constitutional right to be housed in a particular facility"); *see also Coulter v. Unknown Probation Officer*, 562 F. App'x 87, 90 (3d Cir. 2014) (per curiam) (holding that probationer whose first choice of housing was rejected did not have a "constitutional right to housing of one's choice"); *Johnson*, 586 F.

App'x at 874 (parolee's allegations that parole officer restricted parolee's movements failed to state an actionable claim in habeas corpus or under § 1983).   Indeed, "[a]bsent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts."   *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982) (per curiam).

In this case, the Board's decision to house Plaintiff in a facility presumably intended to assist him with his medical needs cannot be construed as "flagrant or unauthorized," and Plaintiff has not alleged any other facts that indicate that the Board's determination to place Plaintiff at Bostick violated due process.   Moreover, Plaintiff did not include a proposed residence address on his application for parole; he alleges that his counselor forgot to include this information.   2d Recast Compl. 14, ECF No. 21.   Thus, the Board could not have even considered placing Plaintiff in his preferred housing location.   Plaintiff has therefore failed to state an actionable due process claim against the Board concerning his placement at Bostick rather than some other location, and any such claim should be dismissed.

Plaintiff also appears to raise a due process challenge to the Board's requirement that he register as a "domestic offender" even though he has never been convicted of any domestic offense.   *See, e.g.,* 2d Recast Compl. 12, ECF No. 21.   Plaintiff may be referring to O.C.G.A. § 19-13-50 *et seq.*, which provides for the creation and maintenance of a Georgia Protective Order Registry.   The registry "include[s] a complete and systematic record and index of all protective orders and modifications thereof" to "aid law

16

enforcement officers, prosecuting attorneys, and the courts in the enforcement of protective orders and the protection to victims."   O.C.G.A. § 19-13-52(a), (c).

The Eleventh Circuit has held that "the stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause," and therefore "[a]n inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender."   *Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir. 1999) (per curiam).   Plaintiff's claims that the Board improperly labeled him a "domestic offender" even though he has not been convicted of any domestic offense are analogous to the claims at issue in *Kirby*, and they shall therefore proceed against the Chairman of the Board.

### 2.   *Ex Post Facto Claims*

Plaintiff also alleges that several special conditions of his parole violate the ex post facto clause of the United States Constitution.   2d Recast Compl. 11-12, ECF No. 21; U.S. Const. art. 1, § 10, cl. 1 ("No state shall . . . pass any . . . ex post facto law.").   "This clause prohibits the states from enacting any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed."   *Hock v. Singletary*, 41 F.3d 1470, 1471 (11th Cir. 1995) (per curiam) (cleaned up).   The "bar applies only to criminal laws, not to civil regulatory regimes." *United States v. W.B.H.*, 664 F.3d 848, 852 (11th Cir. 2011).   A criminal law is ex post facto when it is "retroactively applied" and "disadvantage[s] the offender because it may impose greater punishment."   *Hock*, 41 F.3d at 1471.

In this case, Plaintiff contends the domestic offender classification and registry requirement, the "domestic violence offenders course fee," the "substance abuse assessment fee," and Plaintiff's assignment to Bostick all violated the ex post facto clause because they were not conditions of parole at the time he was convicted. Courts have held that the imposition of monetary fees, fines, or payments that "flow[] from the commission of the underlying crime, rather than from some subsequent act of the parolee," may be subject to scrutiny under the ex post facto clause because they "could be construed as part of the punishment of that crime because the payment is a condition of the parolee's continuing release from prison." *Murray v. Phelps*, No. 88-3302 (5th Cir. Feb. 3, 1989) (unpublished, reprinted as Appendix to *Sheppard v. State of La. Bd. of Parole*, 873 F.2d 761, 764 (5th Cir. 1989) (per curiam)); *Henry v. Bd. of Pardons & Paroles*, No. 01-20507, 2001 WL 113822, at *1 (5th Cir. 2001) (unpublished) (per curiam) (holding that district court abused its discretion in dismissing as frivolous plaintiff's claim that statute requiring payment of supervisory parole fee violated ex post facto clause). Registry requirements may also be subject to ex post facto challenges. *See, e.g., W.B.H.*, 664 F.3d at 860 (considering ex post facto attack on Sex Offender Registration and Notification Act). The precise nature of the fees in this case is not clear from Plaintiff's pleadings, and the Eleventh Circuit does not appear to have addressed any ex post facto challenges to the Georgia domestic offender registry laws presumably at issue in this case. Without further factual development, the Court therefore cannot say that Plaintiff's ex post facto claims against the Chairman of the Board related to these three conditions are entirely frivolous.

18

On the other hand, Plaintiff's claims that the Board's decision to place him at Bostick violates the ex post facto clause fails because Plaintiff has not pleaded any facts to show that such placement amounts to punishment. "While the Ex Post Facto clause prohibits 'punishment' it does not prohibit state action that is fundamentally rehabilitative." *Giguere v. Heyns*, No. 14-cv-12513, 2014 WL 4829617, at *2 (E.D. Mich. Sept. 29, 2014) Plaintiff has not alleged any facts that would indicate that the Board placed Plaintiff at Bostick to punish him rather than to rehabilitate him. *Id.* (parole placement at community reentry center could not violate ex post facto clause where such placement was "rehabilitative in nature"); *see also Morrissey*, 408 U.S. at 477 (stating that the purpose of parole "is to help individuals reintegrate into society as constructive individuals as soon as they are able"); *Yahweh*, 158 F. Supp. 2d at 1340 (observing that "two major purposes of parole conditions are the rehabilitation of the prisoner and the protection of the public"). Any conditions that are even arguably punitive in nature appear to have been unilaterally imposed by the Defendants at Bostick. Plaintiff has also failed to allege any facts indicating that placement at Bostick unconstitutionally extends his sentence. *Giguere*, 2014 WL 4829617 at *3. Plaintiff has therefore failed to state an actionable ex post facto claim against the Board related to these allegations, and any such claims should be dismissed.

## C.  Claims under the ADA, Rehabilitation Act, and FHA

Plaintiff next alleges that the Board violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; Section 504 of the Rehabilitation

Act ("RA"), 29 U.S.C. § 701; and the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, when it assigned him to Bostick Nursing Center.   *See, e.g.,* 2d Recast Compl. 5, ECF No. 21.   Plaintiff generally states these are "disability discrimination" claims.   *Id.*   For the reasons discussed below, however, these claims fail.[6]

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132.   The RA similarly provides, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."   29 U.S.C. § 794(a).   The FHA has two provisions that prohibit discrimination on the basis of disability with regard to housing decisions:   42 U.S.C. § 3604(f)(1) prohibits a party from discriminating "in the

---

[6] Plaintiff appears to refer to various provisions of the Georgia Constitution in his Second Recast Complaint in connection with his "disability discrimination" claims.   2d Recast Compl. 5, ECF No. 21.   Plaintiff, however, does not clearly explain why each of these provisions are relevant.   As a rule, a district court will decline to exercise supplemental jurisdiction over state law claims when it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).   Although it is recommended that certain of Plaintiff's federal claims should survive initial screening, it is possible that such claims may fail if faced with a motion to dismiss or motion for summary judgment.   In the event that the federal claims over which this Court has original jurisdiction are dismissed, the Court will likely decline to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3).   Because federal jurisdiction over Plaintiff's state law claims remains an unsettled issue, and because Plaintiff has failed to clearly set forth the substance of any state law claims he intends to raise, it is unnecessary and inappropriate to fully address the merits of such claims at this early stage of the case.

sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . that buyer or renter," and 42 U.S.C. § 3604(f)(2) prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provisions of services or facilities in connection with such a dwelling, because of a handicap of . . . that person[.]"   While "there are important differences between" these statutes, "many courts" analyze disability discrimination claims under these provisions "as one."   *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*, 46 F.4th 1268, 1275 (11th Cir. 2022); *see also Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 919 (10th Cir. 2012).   "Whatever the statutory rubric," these laws require a plaintiff to allege facts sufficient to show that a defendant either "(1) intentionally discriminated against the disabled, (2) engaged in conduct that had an unlawful disparate impact on the disabled, or (3) failed to provide a reasonable accommodation for the disabled."   *Cinnamon Hills*, 685 F.3d at 919.

It is not entirely clear under which of these three theories Plaintiff seeks to proceed. As best as the Court can tell, however, it appears he is alleging that the Board intentionally discriminated against him when they assigned him to Bostick.   This type of intentional discrimination claim is also referred to as a "disparate treatment" claim.   *Id.*   To prevail on a disparate treatment claim, a plaintiff must "prove that he was treated less favorably than a similarly situated, non-disabled person."   *Sailboat Bend*, 46 F.4th at 1275; *see also id.* at 1276 (noting that Congress "prohibited intentional discrimination that inures to the detriment or disadvantage of the protected class").

In this case, Plaintiff does not allege that the Board treated him less favorably than any non-disabled parolee.   The only decision that appears to have taken Plaintiff's disability into account was the decision to parole him to Bostick, a facility designed to accommodate the needs of elderly or disabled parolees.   It is true that parole proceedings, including the substantive decision-making of a state parole board, could constitute activity protected by the antidiscrimination statutes Plaintiff cites.   For example, the Ninth Circuit concluded that the plaintiffs stated an actionable claim under Title II of the ADA when they alleged that the parole board categorically excluded from parole consideration all inmates with a history of substance abuse, which is a recognized disability.   *Thompson v. Davis*, 295 F.3d 890, 898-99 (9th Cir. 2002).   In doing so, however, the court was careful to note that its holding would not prohibit parole boards from considering an inmate's disability in determining whether parole was appropriate.   *Id.* at 894 n.4 ("Title II does not categorically bar a state parole board from making an individualized assessment of the future dangerousness of an inmate by taking into account the inmate's disability.").   The court reasoned that "[a] person's disability that leads one to a propensity to commit crime may certainly be relevant in assessing whether that individual is qualified for parole," and a parole board could also "show that legitimate penological interests justify consideration of an inmate's status beyond that appropriate in other settings."   *Id.*

This is not a case like *Thompson* where Plaintiff was automatically disqualified from consideration for parole due to his disability.   Rather, the Board appears to have taken the approach condoned in *Thompson* when it assigned Plaintiff to Bostick: it considered

Plaintiff for parole, granted clemency, and determined what placement would best accommodate his personal circumstances.[7]   Individualized consideration of Plaintiff's disabilities is unquestionably relevant to this determination and does not amount to disability discrimination.  *See Thompson*, 295 F.3d at 894 n.4; *see also Jenkins v. N.Y. City Dep't of Homeless Svcs.*, 643 F. Supp. 2d 507, 516 (S.D.N.Y. 2009) (dismissing plaintiff's claims that ADA required state health officials to place plaintiff in general population homeless shelter rather than mental health facility where "entertaining such a claim" would require "the Court to substitute its (non-existent) medical judgment for that of the trained DHS official who diagnosed him").  Plaintiff has thus failed to state a disability discrimination claim based on disparate treatment, and any such claims he is attempting to raise in this case should be dismissed.

Plaintiff may also be suggesting that the Chairman violated § 3604(f)(1) of the FHA by placing him in Bostick, thereby making his preferred housing "unavailable."  As an initial matter, Plaintiff has not pleaded any facts suggesting that he is a "buyer" or "renter" of the space he is occupying at Bostick.  *See, e.g., Abdus-Sabur v. Hope Village, Inc.*, 221 F. Supp. 3d 3, 15-16 (D.D.C. 2016) (finding that resident of privately-owned residential reentry house that provided reintegration services for federal offenders was not a "buyer" or "renter" within the meaning of § 3604(f)(1) because individuals residing in that facility

---

[7] The pleadings suggest that the Board could not have considered placing Plaintiff in his preferred housing location, since his counselor failed to include that information on his parole application.  2d Recast Compl. 14, ECF No. 21.

were federal inmates referred for placement by the BOP).   His claims under § 3604(f)(1) could thus be dismissed for this reason.

In addition, Plaintiff has not demonstrated how Defendants denied or made a dwelling unavailable to him.   In analogous circumstances, the Second Circuit held that a plaintiff failed to state an FHA claim when the New York City Department of Homeless Services ("DHS") decided to place the plaintiff in a mental health shelter as opposed to a general population shelter.   *Jenkins v. N.Y. City Dep't of Homeless Svcs.*, 391 F. App'x 81, 82 (2d Cir. 2010).   The court reasoned there was "no doubt" that the department "did not 'make unavailable or deny, a dwelling'" to the plaintiff; instead, it merely determined that because of the plaintiff's mental illness, "it was safer and more appropriate for [plaintiff] and other homeless shelter residents for [plaintiff] to be offered placement in a mental health shelter than in a general population shelter."   *Id.* at 83 (citing 42 U.S.C. § 3604(f)(9) ("Nothing in this subsection requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others.")).   In this case, the Board did not "make unavailable" any dwelling over which it had control; rather, it attempted to accommodate Plaintiff's disability by releasing him to Bostick.   And again, the Board could not have considered placing Plaintiff in his preferred housing location since Plaintiff's parole application did not contain that information.   2d Recast Compl. 14, ECF No. 21.   Plaintiff has therefore also failed to state an actionable FHA claim under § 3604(f)(1), and all such claims should be dismissed.

24

## IV.    Conclusion

For the foregoing reasons, Plaintiff's motion for leave to include excess pages (ECF No. 22) is **GRANTED**, but Plaintiff's motion for recusal (ECF No. 23) is **DENIED.** Plaintiff's § 1983 due process claims related to his classification as a "domestic offender" and his ex post facto claims concerning the domestic offender registry requirements and the fees imposed as conditions of his parole shall proceed for further factual development against the Chairman of the Board.   It is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice** as described in more detail above.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.   Any objection is limited in length to **TWENTY (20) PAGES**.   *See* M.D. Ga. L.R. 7.4.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against the Chairman of the Georgia Board of Pardons and Paroles, it is accordingly

**ORDERED** that service be made on Defendant and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendant is reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.   Defendant is similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by

26

mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.   The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.   **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension

is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.   This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first).   The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.   The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:   except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.

Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 5th day of June, 2024.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge

29